UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**DISH Network L.L.C., et al.**

    v.                                                    Civil No. 14-cv-266-PB

**Gerson Tendler**


## REPORT AND RECOMMENDATION

DISH Network L.L.C. ("DISH Network"), Echostar Technologies L.L.C. ("Echostar"), and Nagrastar LLC ("Nagrastar") brought suit against Gerson Tendler, asserting claims arising out Tendler's alleged use of piracy software to unlawfully obtain DISH Network's satellite broadcasting of television programs without authorization.  When Tendler failed to appear, default was entered against him.  See Doc. No. 7.  Before the court for a Report and Recommendation is the plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2).  For the reasons that follow, the court recommends that the plaintiffs' motion be granted.


## Standard of Review

After default is entered and when the amount at issue is not a sum certain, "the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); see also KPS &

Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). "Although a defaulting party admits the factual basis of the claims asserted against it, the defaulting party does not admit the legal sufficiency of those claims." 10 James Wm. Moore, Moore's Federal Practice § 55.32[1][b] (3d ed. 2013). To recover on a motion for default judgment, "[t]he claimant must state a legally valid claim for relief." Id.; see also Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). Therefore, before entering default judgment, the court must determine whether the admitted facts state actionable claims. See Hop Hing Produces Inc. v. X & L Supermarket, Inc., No. CV 2012-1401(ARR)(MDG), 2013 WL 1232919, at *2 (E.D.N.Y. Mar. 4, 2013); E. Armata, Inc. v. 27 Farmers Market, Inc., No. 08-5212 (KSH), 2009 WL 2386074, at *2 (D.N.J. July 31, 2009).

## **Background**

By virtue of his default, Tendler concedes the following facts: DISH Network operates a satellite distribution system by which it broadcasts "movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price." Compl. ¶

2

10.  The content broadcast by DISH Network is copyrighted, and it "has the authority of the copyright holders to protect the works from unauthorized reception and viewing."  Id. ¶ 12.

DISH Network's signals are encrypted.  Echostar and Nagrastar each provides components which together "convert DISH Network's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH Network subscriber."  Id. ¶ 18.

"Various devices have appeared on the black market over the years for the purpose of illegally decrypting or 'pirating' DISH Network programming."  Id. ¶ 19.  A commonly used form of satellite pirating is called "Internet key sharing" or "IKS." IKS uses internet-enabled "Free to Air" ("FTA") satellite receivers, onto which piracy software is loaded.  Through IKS, the FTA receiver contacts a specific computer server over the internet, the IKS server, which provides control words – in essence, a password - necessary to descramble various channels of DISH Network's programming.  Once the control words are obtained, they are sent from the IKS server over the Internet to an FTA receiver, where they are used to decrypt DISH Network's signal and view programming without paying a subscription fee.

There are various IKS services through which members purchase a subscription to obtain control words to circumvent DISH Network's security system and receive programming without authorization.  Two such services are called IKS Rocket and Nfusion Private Server ("NFPS").  Tendler purchased a one-year subscription to IKS Rocket on November 8, 2011.  Tendler also purchased a one-year subscription to NFPS in November of 2012. Tendler used both IKS Rocket and NFPS to access DISH Network programming unlawfully and without paying a subscription fee.

## Discussion

The plaintiffs brought this action against Tendler alleging three claims: (i) Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1); (ii) Violation of the Federal Communications Act ("FCA"), 47 U.S.C. § 605(a); and Violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1)(a) and 2520.  After default was entered against Tendler, the plaintiffs moved for default judgment under Rule 55(b)(2) on only Count III, their ECPA claim (doc. no. 8).

Under the ECPA, any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any . . . electronic

4

communication . . . shall be subject to suit as provided in subsection (5)."[1]  § 2511(1)(a).  Subsection (5) refers to § 2520, which allows for a private right of action against all who violate § 2511.

The ECPA provides that a plaintiff in a civil action may recover "from the person or entity . . . which engaged in [a] violation such relief as may be appropriate."  § 2520(a).  It further provides that appropriate relief may include "equitable or declaratory relief" and damages as provided under the statute.  Id. at (b).

In their motion for default judgment, the plaintiffs seek statutory damages under the ECPA in the amount of $10,000 and ask the court to issue a permanent injunction.

## A.   __Damages__

With respect to scrambled or encrypted electronic communications, the ECPA authorizes an award of damages in the greater of (A) the sum of actual damages suffered by the plaintiff and any profits made by the violator as a result of

---

[1] "Courts have recognized encrypted satellite transmissions as 'electronic communications' under the ECPA."  DISH Network L.L.C. v. DelVecchio, 831 F. Supp. 2d 595, 598 (W.D.N.Y. 2011) (collecting cases); see also United States v. Shriver, 989 F.2d 898, 902 (7th Cir. 1992); DIRECTV, Inc. v. Lovejoy, 366 F. Supp. 2d 132, 136 (D. Me. 2005).

the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000. § 2520(c).  "Congress wrote § 2520(c)(2) to give discretion to the Court in determining whether to award damages, but the plain language of the statute does not . . . authorize the Court to grant anything other than the damages permitted by the statute." DelVecchio, 831 F. Supp. 2d at 601.  In other words, a court "has the discretion to award either the statutory sum or no damages at all, but may not elect an award somewhere between the two."  DISH Network L.L.C. v. Hoggard, No. 1:14-cv-331-AWI-JLT, 2014 WL 2208104, at *5 (E.D. Cal. May 28, 2014) (internal citations omitted).

### 1.    Failure to seek remedy under the FCA

In their memorandum in support of their motion for default judgment, the plaintiffs argued that they are entitled to $10,000 in statutory damages and cited case law stating that, with facts similar to those in this case, "awarding no damages at all would be an abuse of discretion."  Pls.' Mem. (doc. no. 8-1) at 6, 7 (internal quotation marks and citations omitted). In an order dated September 11, 2014, the court stated: "The plaintiffs' memorandum fails to address the substantial case law suggesting that the court has the power to award damages of less

6

than $10,000 in the circumstances presented in this case

pursuant to 47 U.S.C. § 605(a), and to award no additional

damages pursuant to § 2520."[2]  Or. (doc. no. 9) at 1.  The order

also stated that if the plaintiffs contend that the court would

abuse its discretion to award damages of less than $10,000,

"they shall file a supplemental memorandum . . . explaining

their position in detail . . . . [and shall] identify and

distinguish the many decisions from other courts that support

the view that a court may award less than $10,000 in damages

when presented with circumstances similar to those presented in

this case."  Id. at 2.

The plaintiffs filed their supplemental memorandum in

support of their motion for default judgment on October 2, 2014.

In their memorandum, the plaintiffs agreed that several "courts

have declined to award $10,000 in damages under the ECPA and

---

[2] Although the court did not cite any cases in its order, several
cases hold that when a satellite broadcasting provider alleges
claims under both the FCA and the ECPA, it is not an abuse of
discretion to award statutory damages under the FCA, which may
be as low as $1,000, and decline to award additional damages
under the ECPA for the same conduct.  See, e.g., DIRECTV, Inc.
v. Brown, 371 F.3d 814, 818-19 (11th Cir. 2004); DIRECTV, Inc.
v. Rodriguez, No. 03-CV-4590, 2007 WL 1834676, at *2-*3
(E.D.N.Y. June 26, 2007); DIRECTV, Inc. v. Haynes, No. 5:03-CV-
872, 2005 U.S. Dist. LEXIS 46588, at *8 (E.D.N.C. Feb. 11,
2005); DIRECTV, Inc. v. Huynh, 318 F. Supp. 2d 1122, 1130-33
(M.D. Ala. 2004); DIRECTV, Inc. v. Kaas, 294 F. Supp. 2d 1044,
1049 (N.D. Iowa 2003).

instead awarded lesser damages under the FCA . . . ."  Pls.'
Supp. Mem. (doc. no. 10) at 8.  The plaintiffs stated that in
those cases, however, and specifically in those cases where the
plaintiffs moved for default judgment, the plaintiffs moved for
judgment on both their ECPA claim and their FCA claim.  The
plaintiffs stated that they did not address the holdings of
those cases in their motion for default judgment because, unlike
those cases, they moved for default judgment on only their ECPA
claim.

Several cases address the circumstances presented here
where a plaintiff satellite broadcast provider alleged claims
under both the FCA and the ECPA, and moved for default judgment
on only one of the claims.  See, e.g., DISH Network L.L.C. v.
Gonzalez, No. 13-cv-107-LJO-SKO, 2013 WL 2991040 (E.D. Cal. June
14, 2013); DISH Network L.L.C. v. Sanchez, No. 1:11-cv-1485-AWI-
SKO, 2012 WL 2090439 (E.D. Cal. June 8, 2012); DIRECTV, Inc. v.
Trawick, 359 F. Supp. 2d 1204 (M.D. Ala. 2005); DIRECTV, Inc. v.
Christomos, No. 03-1622-HO, 2004 WL 2110700 (D. Or. Sept. 20,
2004).  In each of these cases, the court considered only the
relief requested in the plaintiffs' motion for default judgment.
In addition, the courts in Gonzalez and Sanchez noted, in
identical language, the court's reluctance to consider relief

under a statute that was not the basis of the motion for a

default judgment:

> Plaintiffs' motion for default judgment only seeks
> damages under the Wiretap Act (also referred to as the
> ECPA) and the Court is not positioned to elect to
> award damages only under the [FCA] . . . . The Court
> has found no authority suggesting that it is empowered
> to supplant the remedy sought in Plaintiffs' motion
> for default judgment with a different statutory remedy
> pled and prayed for in the complaint, but not
> requested as part of the default judgment.

Gonzalez, 2013 WL 2991040, at *10 n.8; Sanchez, 2012 WL 2090439,

at *11 n.12.

This court has not found any contrary authority.

Therefore, because the plaintiffs have moved for default

judgment on their claim under the ECPA, they are entitled to

only the remedies allowed under the ECPA.

  2. Damages under the ECPA

As discussed above, the plaintiffs seek statutory damages

of $10,000 under the ECPA.  Whether to award the full amount of

statutory damages authorized under the ECPA or none at all falls

to the discretion of the court.  Although the First Circuit has

not addressed the issue, several courts have considered a list

of factors in determining whether statutory damages should be

awarded on an ECPA claim.  These factors include:

> [T]he severity or minimal nature of the violation;
> whether there was actual damage to the victim; the

9

extent of any intrusion into the victim's privacy; the relative financial burden of the parties; whether there was a reasonable purpose for the violation; and whether there was any useful purpose to be serviced by imposing the statutory damages amount.

DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 325-26 (4th Cir. 2008) (citing Nalley v. Nalley, 53 F.3d 649, 654 (4th Cir. 1995)); see also Sanchez, 2012 WL 2090439, at *9; DIRECTV, Inc. v. Ferri, No. 5:08CV122, 2009 WL 4406052, at *3 (W.D.N.C. Nov. 25, 2009); DIRECTV, Inc. v. Smith, No. 1:04-CV-25, 2005 WL 1138830, at *4 (E.D. Tenn. May 12, 2005).[3]  In addition, the Fourth Circuit has held that when a plaintiff selectively seeks relief under only the ECPA despite the presence of an FCA claim, the court "may consider on a case-by-case basis whether awarding the particular damages sought might represent a windfall to the plaintiff in light of the damages otherwise available but not sought." Rawlins, 523 F.3d at 330 n.13.

---

[3] Certain courts have considered additional factors, such as "(1) whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of [the plaintiffs'] financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for his actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct."  Huynh, 318 F. Supp. 2d at 1132.

The relevant factors weigh in favor of awarding the plaintiffs $10,000 in statutory damages.  Through his default, Tendler conceded that he purchased one-year subscriptions to two different IKS services, and that he used those services to access DISH Network programming without a subscription by using an unauthorized receiver.  <u>See</u> Compl. ¶¶ 25-27.  In their motion for default judgment, the plaintiffs pointed to evidence showing that Tendler had an additional subscription to an IKS service, and that Tendler had made posts on satellite television piracy forums suggesting that he had been unlawfully intercepting DISH Network programming since at least 2009.  <u>See</u> Pls.' Mem. (doc. no. 8-1) at 6.

The plaintiffs suffer actual harm from the theft of DISH Network programming.  The plaintiffs invest millions of dollars in security measures designed to prevent piracy.  Specifically, the plaintiffs put in evidence that the IKS method of piracy used by Tendler is designed to circumvent the latest security technology developed by the plaintiffs, "which took approximately 18 months to implement and had an estimated cost of more than $100 million."  <u>Id.</u> at 8.  Actions like those taken by Tendler force the plaintiffs to spend more time, effort, and money developing additional security measures.

In addition, piracy like Tendler's negatively affects the plaintiffs' revenues.  DISH Network's average monthly revenue per authorized subscriber is approximately $70.  See id. at 9. The programming to which Tendler had access to would cost a consumer approximately $307.93 per month.  See Pls.' Supp. Mem. (doc. no. 10) at 5.  In addition, piracy deprives Echostar and Nagrastar of revenues ordinarily obtained from the sale of receiving equipment to legitimate DISH Network subscribers.  See Pls.' Mem. (doc. no. 8-1) at 7.

Finally, awarding damages under the ECPA will serve the purpose of not only compensating the plaintiffs for their losses, but will also act as a deterrent for Tendler and others to not engage in the theft of DISH Network programming. Considering that Tendler did not appear, and thus did not put in any evidence concerning a reasonable purpose for the violation or the financial burden on him, the court finds that the factors weigh in favor of awarding $10,000 in statutory damages.  Cf. Christomos, 2004 WL 2110700 (awarding no damages under the ECPA when there was no evidence that the defendant ever used or owned a receiver, let alone accessed programming without authorization); DIRECTV, Inc. v. Taylor, No. 03-6126-HO, 2004 WL 1878337 (D. Or. Aug. 19, 2004) (no evidence that defendant used

pirate access devices or had access to programming); DIRECTV, Inc. v. Griffin, 290 F. Supp. 2d 1340 (M.D. Fla. 2003) (evidence showed that the defendant obtained pirate access devices to test security systems installed by his company, not to steal programming).

If the courts in this circuit were to follow the Fourth Circuit, the court would consider whether awarding the damages sought under the ECPA might represent a windfall in light of the damages that would have been available under the FCA.  See Rawlins, 523 F.3d at 330 n.13.  In light of the circumstances of this case, an award of $10,000 in statutory damages is not a windfall to the plaintiffs.

First, the plaintiffs did not seek costs or attorneys' fees in their motion for default judgment, which they would have automatically been entitled to had they moved for and been granted default judgment on their FCA claim.  See § 605(e)(3)(B)(iii); see also DIRECTV, Inc. v. Figler, No. 04-0773, 2008 WL 382758, at *1 (W.D. Pa. Feb. 11, 2008) (noting that an award of reasonable attorneys' fees and costs is mandatory under the FCA, but discretionary under the ECPA). Second, even had the plaintiffs moved for and been granted default judgment on their FCA claim, and even had the court

13

awarded damages under the FCA and no additional damages under the ECPA, the court likely would have granted an award above the minimum of $1,000.  The facts of this case suggest that an award of greater than $1,000 under the FCA would have been appropriate.  Cf. DIRECTV, Inc. v. Agee, 405 F. Supp. 2d 6, 11-12 (D.D.C. 2005) (evidence of only the defendant's purchase of a pirate access device was insufficient to warrant an award beyond the statutory minimum); DIRECTV, Inc. v. Borich, No. Civ.A. 1:03-2146, 2004 WL 2359414, at *6 (S.D. W. Va. Sept. 17, 2004) (same); DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 463 (S.D.N.Y. 2003) (same).

Here, even taking into account the plaintiffs' decision to selectively pursue damages under the ECPA, and not under the FCA, the court does not believe an award of $10,000 represents a windfall to the plaintiffs.  This amount is sufficient to hold Tendler accountable for misconduct and acts as a deterrent to others from committing similar acts in the future.  Accordingly, the court recommends that the allowable statutory damages be awarded pursuant to § 2520(c)(2)(B) in the amount of $10,000.

**B.    Permanent Injunction**

The ECPA authorizes courts to grant appropriate relief including preliminary and other equitable or declaratory relief

as may be appropriate.  See § 2520(b)(2).  The criteria for the issuance of a permanent injunction requires a plaintiff demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see also Esso Standard Oil Co. v. Lopez-Freytes, 522 F.3d 136, 148 (1st Cir. 2008).

The court finds that based on Tendler's conduct, the plaintiffs have suffered irreparable injury based on the piracy of DISH Network's service.  See, e.g., DISH Network L.L.C. v. New Era Elec. Corp., No. SACV 12-1097 DOC (JPRx), 2013 WL 5486798, at *7 (C.D. Cal. Sept. 27, 2013).  In addition, the damages provided for above, while significant, are inadequate to prevent future piracy without injunctive relief. See, e.g., Gonzalez, 2013 WL 2991040, at *10.  There is no hardship to Tendler, other than preventing him from engaging in unlawful activity.  Therefore, the balance clearly weights in the plaintiffs' favor.  In addition, the public interest would be

15

served by protecting copyrights and aiding the enforcement of
federal law.  See Coxcom, Inc. v. Chafee, 536 F.3d 101, 112 (1st
Cir. 2008).

   The court finds the criteria for a permanent injunction
have been met and, therefore, recommends to the district judge
that he permanently enjoin Tendler from intercepting DISH
Network's encrypted satellite communications or assisting anyone
else in doing so.

## Conclusion

   For the foregoing reasons, the court recommends that the
district judge: (1) grant default judgment to the plaintiffs on
Count III; (2) award the plaintiffs $10,000 in statutory
damages; and (3) grant the plaintiffs a permanent injunction.

   Any objections to this Report and Recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617
F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by
objections to magistrate judge's report are subject to review by

16

district court; issues not preserved by such objection are
precluded on appeal).


                              Andrea K. Johnstone
                              United States Magistrate Judge


January 9, 2015

cc:   Donald A. Kennedy, Esq.
      Gerson Tendler, pro se